**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**CHRISTOPHER BURKE,** *Plaintiff, -against-* **JPMORGAN CHASE BANK, N.A.,** *Defendant.*
**Case No.:** _____

*(To be assigned by the Clerk)* ---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

***PRIMA FACIE VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681)***

Plaintiff Christopher Burke, representing himself *pro se*, alleges against Defendant JPMorgan Chase Bank, N.A. ("Chase") as follows:

### I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to **28 U.S.C. § 1331** and **15 U.S.C. § 1681p**, which authorizes consumers to bring civil actions for violations of the Fair Credit Reporting Act ("FCRA") in any United States District Court.
2. Venue is proper in the Southern District of New York pursuant to **28 U.S.C. § 1391(b)(1) and (b)(2)** because the Plaintiff resides in Manhattan, New York, and a substantial part of the events, omissions, and severe identity misattributions giving rise to these claims occurred directly within this judicial district.

### II. PARTIES

3. Plaintiff Christopher Burke is a natural person and a consumer residing in the County of New York, City and State of New York, and is a "consumer" as defined by **15 U.S.C. § 1681a(c)**.
4. Defendant JPMorgan Chase Bank, N.A. is a national banking association with corporate headquarters in New York, New York, and is a "person" and a "furnisher of information" to consumer reporting agencies under **15 U.S.C. § 1681a(b)**.

### III. FACTUAL ALLEGATIONS

5. Plaintiff Christopher Burke is a victim of severe identity misattribution and file-merging by Defendant JPMorgan Chase Bank, N.A.
6. At all times relevant, Plaintiff has maintained an unblemished credit history, a valid social security number, and has physically resided in Manhattan, New York.
7. Starting in 2013, Defendant Chase catastrophically merged Plaintiff's personal consumer identity with that of an unknown third party. This resulted in the opening and reporting of fraudulent accounts, specifically account numbers ending in **#2936**

and **#4930**, as well as the assignment of completely foreign residential history records in Delaware to the Plaintiff's consumer identity.

8. Upon discovering the identity theft and account merging, Plaintiff immediately initiated formal disputes with Chase and relevant regulatory bodies, providing physical evidence of true identity, including a valid New York State Driver's License and local residential utility bills confirming true Manhattan residency.

9. In response to these disputes, Chase initially closed out the administrative investigations by issuing a formal determination letter stating that the accounts involved an "unauthorized third party."

10. In direct contradiction to that finding, on May 12, 2026, Chase's Executive Office issued a final determination letter reversing course. In this correspondence, Chase stated they had "verified" the fraudulent accounts as belonging to the Plaintiff and held the Plaintiff personally liable for the debts.

11. Crucially, Chase's May 12th letter explicitly detailed their verification methodology, admitting that the entire basis for holding the Plaintiff liable was:

    a. An automated transaction passcode sent to a wireless phone device ending in **3165**.

    b. Automated clearinghouse (ACH) payments pulled from a TD Bank account ending in **3881**.

12. Plaintiff does not own, utilize, or have any lawful relationship with the phone number ending in 3165, nor has Plaintiff ever owned an account with TD Bank. Plaintiff's verified phone number of record ends in 2753.

13. Despite being presented with direct physical evidence that Chase used a third party's fraudulent data to "verify" the accounts, Chase refused to conduct a manual Social Security Number (SSN) audit on the underlying TD Bank account.

14. Based entirely on this corrupt, unverified, and mixed consumer data, Chase has executed a punitive corporate "Relationship Exit" blacklist against the Plaintiff, entirely severing the Plaintiff's access to the commercial banking system.

15. On May 14, 2026, Plaintiff served Chase's General Counsel with a formal Litigation Hold and Notice of Intent to File, giving the Defendant five (5) business days to manually decouple the data and lift the blacklist. Defendant has failed to act, resulting in an administrative deadlock.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Burke respectfully requests that this Court enter judgment in his favor and against Defendant JPMorgan Chase Bank, N.A., and grant the following relief:

- An order compelling Defendant to completely delete accounts #2936 and #4930 from all internal and consumer reporting files;
- An order compelling Defendant to immediately rescind the "Relationship Exit" blacklist and restore Plaintiff's banking standing;
- Award statutory and punitive damages pursuant to **15 U.S.C. § 1681n** in the amount of $5,000,000 for willful non-compliance; and
- Award any such further relief as this Court deems just and proper.

Dated: May 21, 2026

New York, New York

Respectfully submitted,

*Christopher Burke*

—————————————————————————

**Christopher Burke, Plaintiff Pro Se**

320 W 30th St, 6A, New York, NY

215-215-2753